## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Jamil Joshua Eason,

Case No. 22-cv-1331 (ECT/DJF)

Plaintiff,

v.

**REPORT AND RECOMMENDATION**

Paul Schnell,

Defendant.

This matter is before the Court on Petitioner Jamil Joshua Eason's Petition for a Writ of Habeas Corpus ("Petition") (ECF No. 1). Mr. Eason argues his trial counsel's failure to consult with him about the State's final plea offer prior to its expiration denied him his constitutional right to the effective assistance of counsel. Mr. Eason contends the Minnesota Supreme Court's decision affirming the denial of his petition for postconviction relief, *Eason v. State*, 950 N.W.2d 258 (Minn. 2022), is contrary to and an unreasonable application of the United States Supreme Court's decisions in *Missouri v. Frye*, 566 U.S. 134 (2012), specifically, and *Strickland v. Washington*, 466 U.S. 668 (1984), more generally (*see* ECF Nos. 2, 13). Because the Minnesota Supreme Court's decision was neither contrary to *Frye* or *Strickland* nor an unreasonable application of those precedents, the Court recommends denying the Petition.

### I.      Background

####    a.  Factual Background

In 2012, a Minnesota jury convicted Mr. Eason of first-degree felony murder based on evidence linking him to a burglary during which the homeowner was stabbed to death. *State v. Eason*, 906 N.W.3d 840, 840-41 (Minn. 2018). Mr. Eason is currently serving a life sentence

with the possibility of supervised release after 30 years. *Eason*, 950 N.W.2d at 261, 63. A week before Mr. Eason's trial, the prosecutor offered him a plea agreement with a recommended sentence of between 420 to 480 months, predicated on a guilty plea to second-degree intentional murder and an agreement to two aggravating sentencing factors. *Id.* at 262. Mr. Eason and his attorneys discussed the offer, and his attorneys indicated he should expect to serve 480 months in prison if he accepted it (ECF No. 1-1 at 5–6). Mr. Eason's attorneys encouraged him to accept the offer, providing him an example of another client who rejected a similar offer, was convicted, and was not yet released on parole after serving 480 months. (*Id.* at 6.) Mr. Eason ultimately declined the offer on the record. *Eason*, 950 N.W.2d at 262. His attorneys believed his unwillingness to plead guilty was a result of pressure to fight his case from other in-custody defendants (ECF No. 1-1 at 6). At a pretrial hearing, the judge asked Mr. Eason whether he understood the plea offer and had time to discuss it with his counsel, and Mr. Eason confirmed that he had. 950 N.W.2d at 262. In response to the judge's questioning, Mr. Eason also confirmed he understood that if he rejected the offer, it may not be available for him to accept later. *Id.* Mr. Eason rejected the State's offer notwithstanding this warning. *Id.*

On the second day of jury selection for Mr. Eason's trial he made a counteroffer, agreeing to plead guilty with a recommended sentence of 360–480 months. *Id.* The prosecutor declined his counteroffer. *Id.* Mr. Eason's attorneys then inquired whether the original offer was still available, but the prosecutor informed them it was not. *Id.* Later that same day, however, the prosecutor made a "last and final offer." *Id.* Under the terms of that offer, Mr. Eason would plead guilty to second-degree intentional murder for an aggravated sentence of 480 months, admit to two aggravating sentencing factors, and waive his right to a trial on the aggravating factors under *Blakely v. Washington*, 542 U.S. 296 (2004). *Id.* Mr. Eason was present when the prosecutor

2

made the offer, *id.*, and acknowledges he understood its terms, but states he did not know if there was a deadline attached to it (ECF No. 1-1 at 6). In response to the offer, which the prosecutor made on the record in open court, the judge told Mr. Eason he would have time to consult with his counsel about it. The judge then recessed the proceedings. *See Eason*, 950 N.W.2d at 262 ("Okay. And, [Mr. Eason], you'll have time to talk with your attorneys about it. We don't need to take the time right now.").

Mr. Eason's attorneys did not discuss the State's "last and final" plea offer with him during the recess, however. *Id.* Instead, Mr. Eason's attorneys asked him if he would be willing to accept the State's previous offer of 420–480 months, if they could convince the State to reopen it. *Id.* Mr. Eason confirmed he would accept that offer. But the State declined to reopen it, and jury selection continued without further plea negotiations. *Id.* The jury ultimately found Mr. Eason guilty of first-degree intentional felony murder, and the district court sentenced him to life in prison with the possibility of supervised release after 30 years. *Id.* at 262–63.

### b. Procedural Background

#### i. Postconviction Court Proceeding and Decision

Mr. Eason filed a petition for postconviction relief in state court on March 26, 2018 alleging ineffective assistance of counsel. (ECF No. 1-1 at 3, 4 ¶ 7.) The court held evidentiary hearings in which Mr. Eason, his attorneys, and the prosecutor testified. (*Id.* at 5 ¶ 8). Mr. Eason testified that if his attorneys had discussed the State's final offer of 480 months with him, he would have accepted it and pled guilty. *(Id.* at 5 ¶ 9). He further testified he would have been able to establish a factual basis for such a plea and admitted—for the first time—to engaging in conduct connected to the victim's death. (*Id.* at 9 ¶ 33.)

Mr. Eason's attorneys testified they likely did not discuss the State's final offer with Mr. Eason because they did not believe he would accept a plea of 480 months in view of his prior rejection of a plea offer of 420–480 months. *See Eason*, 950 N.W. 2d at 270 ("As defense counsel testified at the postconviction hearing 'You know, he—we rejected the 420 to 480, maybe we thought he would reject the 480 and without discussion.'")

Though the postconviction court found Mr. Eason's testimony credible "as to the sequence of events," it found that "his recollections of his motives at the time of trial are clearly colored with the advantage of nearly five years of hindsight." (ECF No. 1-1 at 5 ¶ 9.) Moreover, his new admission of conduct connected to the victim's death, in the court's view, "seemed driven more by a sense of buyer's remorse than by a true representation of what he would have done at the time." (*Id.* at 9 ¶ 33.) The court further noted that, although Mr. Eason was now admitting to acts connected to the murder, his version of the story appeared to raise possible self-defense claims that potentially undermined those admissions. (*Id.*)

Based on this record the court denied Mr. Eason's petition. In reaching its decision, the court found Mr. Eason's case was distinguishable from that of the petitioner in *Frye*, 566 U.S. 133 (2012), in which the Supreme Court found defense counsel's performance deficient for failure to inform the defendant of a written plea offer and remanded the case for additional findings on the question of whether that failure resulted in prejudice. The postconviction court in Mr. Eason's case reasoned that, unlike Mr. Frye, "Mr. Eason was aware of the offer … testified that he understood the terms of the offer … [and] had ample opportunity to accept the offer[.]" (ECF No. 1-1 at 8.) The court also found Mr. Eason's attorneys' belief that he would not have accepted the State's final offer of 480 months was reasonable, given that he previously had

rejected the State's first offer of 420–480 months after his attorneys explained he should expect to serve 480 months if he accepted it. (*Id.*)

The court further found that, regardless of whether Mr. Eason's defense counsel's performance was deficient, he was not prejudiced by his counsel's failure to consult with him regarding the State's final plea offer. (*Id.* at 9–10.) The court reasoned that Mr. Eason's references to a potential self-defense claim and his failure to ask his attorneys about the State's 480-month offer "cast grave doubt on his insistence that he would have pleaded guilty, if only he had been asked again." (*Id.* at 9–10.) The court also found it "doubtful" the prosecutor would have accepted Mr. Eason's plea, because she was only willing to accept a plea with a "full confession", which was at odds with the self-defense-related statements Mr. Eason made at his evidentiary hearing. (*Id.* at 10.)

### ii. Minnesota Supreme Court Decision

The Minnesota Supreme Court affirmed the denial of postconviction relief in a 4-2 decision. *Eason*, 950 N.W.2d 258. It cited the general test for ineffective assistance of counsel established in *Strickland*, which required Mr. Eason to show that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 268 (quoting *Fields v. State*, 733 N.W.23d 465, 468 (Minn. 2007) (quoting *Strickland*, 466 U.S. at 687–88)). It also cited the "general rule" established in *Frye*, that "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Id.* (quoting *Frye*, 566 U.S. at 145).

In holding that counsel's performance did not fall below the Constitution's requirements, the Minnesota Supreme Court first noted that the U.S. Supreme Court in *Frye* found it neither "prudent nor practical to try to elaborate or define detailed standards for the proper discharge of defense counsel's participation in the [plea negotiation] process" "given the nuances of the 'art of negotiation[.]'" *Id.* (quoting *Frye*, 566 U.S. at 144–45) (brackets added).  The court cited *Frye*'s guidance that "the standard for counsel's performance is not determined solely by reference to codified professional practice, [but that] these standards can be important guides." *Id.* (quoting *Frye*, 566 U.S. at 145) (bracket added).  The court further acknowledged the "American Bar Association's recommendation that defense counsel 'promptly communicate and explain to the defendant all plea offers made by the prosecuting attorney.'" *Id.* (quoting *Frye*, 566 U.S. at 145 (quoting ABA Standards for Criminal Justice, Pleas of Guilty 14-3.2(a) (3d ed. 1999))).

But the court distinguished Mr. Eason's case from *Frye* on grounds that Mr. Eason was "aware of every plea offer, and actively participated in the plea negotiation process." *Id.* at 269. The court noted that Mr. Eason was present in the courtroom when the State made the 480-month "final offer", and that only after receiving Mr. Eason's permission did defense counsel make another attempt on the record to reach a plea agreement for 420-480 months—again with Mr. Eason present. *See id.* at 270–71.  The court further noted that Mr. Eason received advice from counsel regarding the State's original offer of 420-480 months, and reasoned that this offer was virtually identical to the State's final offer in view of the fact that his counsel told him to expect to serve 480 months if he accepted it.  *Id.* at 269.  The court stated that, given "the vigorous and thorough nature of defense counsel's advice" and their "strenuous advocacy for him" during the plea negotiations, along with the presumption of competence afforded by

6

*Strickland*, it would be hard pressed to conclude Mr. Eason received ineffective assistance of counsel. *Id.* at 270. Conceding that "best practices may recommend that a defense attorney discuss each and every offer with a client," the court declined to adopt a bright-line rule requiring such advice and inquiry, particularly since Mr. Eason was fully aware of all offers and had been counseled about a previous, similar offer. *Id.* Having found Mr. Eason's counsel's performance was not constitutionally deficient, the court did not address whether Mr. Eason had demonstrated prejudice. *Id.* at 271.

Two justices dissented, and Mr. Eason relies heavily on the dissenting opinion in his Petition before this Court. The dissent argued Mr. Eason's defense counsel's performance was deficient because it "fell below an objective standard of reasonableness" as defined by "prevailing professional norms." *Id.* at 271 (quoting *Strickland*, 466 U.S. at 687–88). Specifically, the dissent argued that although it was undisputed the plea offer was communicated to Mr. Eason, his defense attorneys failed in their duty to advise him prior to significant decision-points in the case and aid him in determining the best course of action. *Id.* (citing ABA Model Rule 1.4(b), Minnesota Rule of Professional Conduct 1.4, and ABA Criminal Justice Standard 4-5.1.) The dissent further offered a different interpretation of *Frye* than that adopted by the majority, stating, "*Frye* did not cabin its holding regarding ineffective assistance to defense counsel's failure to *communicate* the offer to defendant. The Court also noted that allowing the offer to expire 'without *advising* the defendant' was constitutionally significant." *Id.* at 273 (quoting *Frye*, 566 U.S. at 145). Finally, the dissent criticized the majority decision on grounds that Mr. Eason was a "functionally illiterate" 18-year-old, and that to suggest such an individual "should have spoken up in court to accept a plea offer that his attorneys had not discussed with him" was "contrary to basic principles of Sixth Amendment jurisprudence". *Id.* Concluding that

Mr. Eason had also established prejudice, *id.* at 276–79, the dissent argued the case should be remanded to the district court with instructions that the State's final offer to Mr. Eason be reinstated. *Id.* at 279.

## II.    Standard of Review

The standard established by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") for a successful habeas petition under section 2254 is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (citations omitted). Under 28 U.S.C. § 2254(d)(1), a federal court may grant habeas relief only when the state court's decision on the merits: (i) "resulted in a decision that was contrary to … clearly established Federal law, as determined by the Supreme Court of the United States;" or (ii) "involved an unreasonable application of[] clearly established Federal law, as determined by the Supreme Court of the United States." Clearly established federal law "includes only the holdings, as opposed to the dicta, of [the Supreme Court's] decisions." *Woods*, 575 U.S. at 316 (citation and quotation omitted) (brackets added). "Where Supreme Court decisions 'provide no categorical answer' to the issue at hand and do not 'squarely address[] the issue' presented, federal law is not clearly established for purposes of a § 2254 petition." *Young v. Symmes*, 06-cv-4246 (JRT/JJG), 2008 WL 4748569, at *2 (D. Minn. Oct. 28, 2008) (quoting *Wright v. Van Patten*, 552 U.S. 120, 125–26 (2008)) (bracket in *Young*).

A state court decision is "contrary to" clearly established federal law when, for example, the state court "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases[,]" or when it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedents." *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000) (brackets added). In

contrast, a state court decision is an "unreasonable application" of clearly established federal law when the state court "identifies the correct governing legal principle from th[e] [Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Worthington v. Roper*, 631 F.3d 487, 495 (8th Cir. 2011) (quoting *Williams*, 529 U.S. at 413) (brackets in *Worthington*). Under the unreasonable application clause, "relief is available … if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question[.]" *White v. Woodall*, 572 U.S. 415, 427 (2014) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

## III.    Analysis

Mr. Eason argues the Minnesota Supreme Court's decision was both contrary to *Frye* and *Strickland*, and an unreasonable application of those precedents.  In his view, *Frye* established a bright-line rule under *Strickland* that defense counsel is not only required to ensure the defendant is aware of any formal offers made by the prosecution, but also "advise their client about the offer and allow him to consider it."  (ECF No. 2 at 12.)  Mr. Eason cites as support the following language from the *Frye* decision:

> This Court now holds that, as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused. Any exceptions to that rule need not be explored here, for the offer was a formal one with a fixed expiration date. *When defense counsel allowed the offer to expire without advising the defendant or allowing him to consider it, defense counsel did not render the effective assistance the Constitution requires.*

*Frye*, 566 U.S. 134 at 145 (emphasis added).  Mr. Eason contends that because his attorneys did not consult with him regarding the State's final offer, the Minnesota Supreme Court's decision was both contrary to and an unreasonable application of *Frye*.  (ECF No. 2 at 12–14.)

But in arguing the decision was contrary to *Frye*, Mr. Eason overreads the holding in that case. The issue presented in *Frye* was "whether defense counsel has the duty to *communicate the terms* of a formal offer to accept a plea on terms and conditions that may result in a lesser sentence, a conviction on lesser charges, or both." *Frye*, 566 U.S. at 145 (emphasis added). In contrast with the prosecutor in Mr. Eason's case, the prosecutor *in Frye* made the plea offers via letters directly to the defendant's attorney, who failed to make the defendant aware of the offers prior to their expiration. *Id.* at 138–39, 145. Given that context, a reasonable interpretation of the Supreme Court's admonition against allowing an offer to expire "without advising the defendant" is that defense counsel must "advise" the defendant of the existence of the plea offer and its terms—the core question at issue in that case. *Id.*; *see also Advise, Merriam-Webster*, https://www.merriam-webster.com/dictionary/advise (providing as one definition of advise: "to give information or notice to") (last accessed June 7, 2023).

This interpretation is consistent with the *Frye* Court's explanation, in addressing measures to ensure against fabricated claims, that "formal offers can be made part of the record at any subsequent plea proceeding or before a trial on the merits, all to ensure that a defendant has been fully *advised* before those proceedings commence." 566 U.S. at 156 (emphasis added); *see also United States v. Edwards*, 606 F. App'x 851, 853 (7th Cir. 2015) ("As suggested by the Court in *Frye*, the government here disclosed the plea offer in open court, thereby ensuring that defendant was fully *advised* of it.") (emphasis added) (citing *Frye*, 566 U.S. at 156; *United States v. Braxton*, 784 F.3d 240, 241 n.1 (4th Cir. 2015) (explaining that, to guard against a claim that defense counsel's failure to communicate an offer constitutes ineffective assistance, *Frye* suggested that "formal offers … be made part of the record … before a trial on the merits, … to ensure that a defendant has been fully advised before those proceedings commence.") (quoting

*Frye*, 566 U.S. at 156)). Mr. Eason's broad reading of the *Frye* decision is wholly inconsistent with the suggestion that a prosecutor can guard against a defendant's fabricated ineffective assistance claim by making the plea offer on the record in open court. And indeed, that is exactly what happened here. The prosecutor in Mr. Eason's case made the plea offer at issue in open court in Mr. Eason's presence, thus ensuring a clear record that he was informed of the existence of the offer and its terms. To interpret the rule articulated in *Frye* in the manner Mr. Eason suggests would undermine the guardrails carefully drawn to protect against abuse of the rule established in that case.

Moreover, while the Court in *Frye* considered whether to further define the duties defense counsel must discharge in plea negotiations, it purposefully avoided additional line-drawing. *See* 566 U.S. at 145 ("The alternative courses and tactics in negotiation are so individual that it may be neither prudent nor practicable to try to elaborate or define detailed standards for the proper discharge of defense counsel's participation in the process.") To impose additional requirements regarding the manner in which defense counsel must consult with the defendant regarding a plea offer that has been communicated to the defendant would exceed the limited scope of the rule the *Frye* Court sought to establish. The Court finds for these reasons that the Minnesota Supreme Court's decision in Mr. Eason's case is not contrary to clearly established federal law.

Nor is the Minnesota Supreme Court's decision an unreasonable application of *Frye* specifically, or *Strickland* more generally. *Frye* did not reach the core question at issue in Mr. Eason's case: whether a defendant advised of the existence and terms of a plea offer on the record, who is afforded time to consider it and an opportunity to consult privately with defense counsel about it, must take advantage of that opportunity and actually consult with defense

counsel about the offer prior to its expiration. Because *Frye* did not squarely address this question, for the Court to conclude that the Minnesota Supreme Court unreasonably applied *Frye*, it necessarily would have to hold that the Minnesota Supreme Court unreasonably refused to extend *Frye*'s holding to Mr. Eason's case. But as the U.S. Supreme Court explained in *White*, the unreasonable application clause of section 2254(d)(1) "does not require state courts to *extend* [a] precedent or license federal courts to treat the failure to do so as an error." 572 U.S. at 426 (emphasis in original) (citation omitted). Instead, under the unreasonable application cause, state courts must only "reasonably apply the rules 'squarely established' by [the Supreme] Court's holdings to the facts of each case." *Id.* at 427 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)). Since *Frye* does not "squarely establish" a right to receive legal advice about a plea offer communicated to a defendant on the record, the Court lacks authority to grant Mr. Eason's Petition on the ground that the Minnesota Supreme Court unreasonably applied *Frye*'s holding. *Id.*

Moreover, relief under the unreasonable application clause is available "if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question[.]" *Id.* (quoting *Harrington*, 562 U.S. at 103). Because the Court finds room for fair-minded disagreement with Mr. Eason's position, it concludes the Minnesota Supreme Court did not unreasonably apply *Frye*'s holding.

The Court similarly concludes the Minnesota Supreme Court's application of *Strickland* in Mr. Eason's case was not unreasonable. Under *Strickland*, Mr. Eason must establish: (1) "that counsel's representation fell below an objective standard of reasonableness," and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 688, 694. *Strickland*'s first prong "is

necessarily linked to the practice and expectations of the legal community:  the proper measures of attorney performance remains simply reasonableness under prevailing professional norms." *Hinton v. Alabama*, 571 U.S. 263, 273 (2014) (quoting *Padilla v. Kentucky*, 599 U.S. 356, 366 (2010) (internal quotation and citation omitted)). In determining whether counsel's performance is constitutionally adequate, "standards of professional practice … can be important guides." *Frye*, 566 U.S. at 146.  However, these standards are "only guides" and courts must consider the reasonableness of counsel's assistance "considering all the circumstances." *Strickland*, 466 U.S. at 688.  In evaluating whether a court has unreasonably applied *Strickland* under section 2254(d), "the proper question is whether there is 'any reasonable argument' that the state court's judgment is consistent with *Strickland*." *Williams v. Roper*, 695 F.3d 825, 832 (8th Cir. 2012) (quoting *Harrington v. Richter*, 562 U.S. 86, 105 (2011)).

Here, while the Minnesota Supreme Court acknowledged "best practices may recommend that a defense attorney discuss each and every offer with a client", it could not find Mr. Eason's defense attorneys' performance constitutionally deficient, given the vigorous advocacy they had provided him in open court and the suggestion in the record that Mr. Eason and his counsel "were engaging in ongoing, open, and honest dialogue about his best course of action, and focused on securing [Mr.] Eason a plea deal with a lower range than was offered by the prosecutor." *Eason*, 950 N.W.2d at 270.  Given these circumstances, and in light of the fact that Mr. Eason was plainly advised of the terms of the plea offer in open court, the Court finds the factual circumstances present a "reasonable argument" that the Minnesota Supreme Court decision is consistent with *Strickland.  Richter*, 562 U.S. at 105; *Williams*, 529 U.S. at 411; *see also White*, 572 U.S. at 427 ("[R]elief is available … if, and only if, it is so obvious that a clearly

established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question[.]") (citation omitted).

Finally, the Court disagrees with the criticism offered by the dissent in the Minnesota Supreme Court, that Mr. Eason was a "functionally illiterate" 18-year-old, and that to suggest such an individual "should have spoken up in court to accept a plea offer that his attorneys had not discussed with him" was "contrary to basic principles of Sixth Amendment jurisprudence". *Eason*, 950 N.W.2d at 276. While the Court is sympathetic to the fact that the proceedings must have been overwhelming to a person of Mr. Eason's age and circumstances, the record does not support this characterization of the facts. Instead, the record reflects that the trial court recessed the proceedings and afforded Mr. Eason an opportunity to consult privately with his attorneys, such that he would not have had to speak up in court had he wished to accept the State's final offer. The record further reflects that despite his youth and lack of education, Mr. Eason was fully capable of expressing his wishes to his attorneys and that they deferred to him, even against their clearly conflicting legal advice. *See id.* at 262; *see also* (ECF No. 1-1 at 6) (noting that Mr. Eason's attorneys believed he was unwilling to plead guilty—against their advice—based on pressure from other in-custody defendants). The Court thus finds ample room for "fairminded disagreement" regarding whether the Minnesota Supreme Court correctly applied *Strickland* in concluding defense counsel's performance did not fall below objective standards of reasonableness.[1]

For all of the foregoing reasons, the Court holds the high bar established under AEDPA for a successful habeas petition has not been met. Because the Minnesota Supreme Court's

---

[1] Having found the Minnesota Supreme Court's determination that counsel's performance was adequate was reasonable, the Court does not reach the question of prejudice under the second prong of the *Strickland* test.

decision was neither contrary to, nor an unreasonable application of *Strickland* or *Frye*, the Court recommends Mr. Eason's petition be denied.

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT** Mr. Eason's Petition for a Writ of Habeas Corpus (ECF No. [1]) be **DENIED** and this matter be **DISMISSED WITH PREJUDICE**.

Dated: July 12, 2023

*s/ Dulce J. Foster*
Dulce J. Foster
United States Magistrate Judge

## <u>NOTICE</u>

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).